UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14CV-00493-JHM

JPMORGAN CHASE, NATIONAL ASSOCIATION                    PLAINTIFF

VS.

GOLDEN IGNOT, LLP, 321-426 LOUISVILLE LEASEHOLD,
LLC; PETER WEITZ; GREENSTONE ASSET MANAGEMENT,
LLC; INDERJIT PANGLI; GI LOUISVILLE, LLC                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Golden Ignot, LLP, Peter

Weitz, and Inderjit Pangli, to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6)

[DN 29]. Fully briefed, this matter is ripe for decision.

## I. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6),

a court "must construe the complaint in the light most favorable to plaintiff[]," League of United

Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all

well-pled factual allegations as true[,]" id., and determine whether the "complaint [] states a

plausible claim for relief[,]" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard,

the plaintiff must provide the grounds for his or her entitlement to relief which "requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only

when he or she "pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls

short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do

not "permit the court to infer more than the mere possibility of misconduct." Id. at 678, 679. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). It is against this standard the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, JPMorgan Chase ("Chase"), is a party to a 1981 Lease Agreement ("Ground Lease") by which it leases property at 321 South Fifth Street and 426 West Jefferson Street in Louisville, Kentucky. Chase owned two adjacent office-building properties at 312 South Fourth Street and 416 West Jefferson Street ("Office Properties"). In August 2007, Chase sold the Office Properties to BREOF BNK2 Midwest LLC ("BREOF Midwest") and transferred its leasehold interest in the Ground Lease Property to BREOF BNK2 Louisville LLC ("BREOF Louisville"). Chase then leased space in the Office Properties from BREOF Midwest ("Office Properties Lease"). Under the Ground Sublease, BREOF Louisville paid Chase the amounts due under the Ground Lease on a pass-through basis. Chase remained liable to the Ground Lease landlord and other third-parties for the amounts due under the Ground Lease.

On February 19, 2013, BREOF Louisville assigned its rights pursuant to the Ground Sublease to Defendant, 321-426 Louisville Leasehold, LLC ("Louisville Leasehold"). Defendant, Peter Weitz, signed the Assignment and Assumption of Sublease for Defendant GI Louisville which is Louisville Leasehold's sole member. Pursuant to the Ground Sublease and the Assignment and Assumption of Sublease, Louisville Leasehold is liable for all the rent, taxes, utilities, and insurance accruing under the Ground Lease. Louisville Leasehold has failed to make any of the payments required as the assignee of the Ground Sublease and is, thus, currently in default.

Contemporaneous with the Ground Sublease assignment, BREOF Midwest sold its

interest in the Office Properties to Defendant, Golden Ignot, for approximately 22 million dollars.  Pursuant to the sale, Golden Ignot now is Chase's landlord under the Office Properties Lease.  Plaintiff maintains that media reports indicate that Defendants, Inderjit Pangli and Greenstone Asset Management, LLC ("Greenstone"), are Golden Ignot's investors, and Defendant, Peter Weitz, is Greenstone's managing director.  Further, documents tendered with the complaint reflect that Pangli executed the purchase agreements for both the Office Properties and the Ground Lease Property and later assigned his interest to Golden Ignot and Louisville Leasehold.  Weitz signed the transfer documents on behalf of Golden Ignot, Louisville Leasehold, and GI Louisville. Plaintiff alleges that Golden Ignot, Louisville Leasehold, and GI Louisville are controlled by an ownership group involving Pangli, Weitz, and/or Greenstone.

In July of 2014, Plaintiff filed suit against Defendants.  Count 1 alleges a breach of contract claim against Louisville Leasehold for failure to pay the amounts due and owing to Chase under the Ground Lease and Ground Sublease.  Count 2 seeks to pierce the corporate veil of Louisville Leasehold to hold Golden Ignot, Weitz, Pangli, Greenstone, and GI Louisville liable for the debts of Louisville Leasehold under a theory of alter ego/instrumentality. Defendants, Golden Ignot, Weitz, and Pangli, now move to dismiss the complaint alleging that (1) Plaintiff fails to plead facts sufficient to state an alter ego claim and (2) Plaintiff fails to plead the requirement that Louisville Leasehold has committed fraud or injustice.

### III.  DISCUSSION

#### A.  Choice of Law

Defendants argue that when considering whether corporate veil-piercing is appropriate, Kentucky courts apply the law of the state of incorporation of the corporation to be pierced, not the law of Kentucky. Defendants assert that the Court should thus apply the law of Delaware,

Louisville Leasehold and GI Louisville's state of incorporation.  Chase disagrees noting that Kentucky courts have not uniformly applied this rule.  Chase points out that that Kentucky courts have applied Kentucky law to such an inquiry.  See Pro Tanks Leasing v. Midwest Propane and Refined Fuels, LLC, 988 F. Supp. 2d 772, 782 (W.D. Ky. 2013); First Const. LLC v. Gravelroad Entertainment, LLC, 2008 WL 2038878 (E.D. Ky. May 12, 2008). Chase maintains that the question makes little practical difference in this case because Delaware and Kentucky law are not markedly different.   In re ClassicStar Mare Lease Litig., 823 F. Supp. 2d 599, 642 (E.D. Ky. 2011).  The Court agrees.

Under Kentucky law, courts will disregard the corporate entity and hold another entity or individual liable where the corporate form is abused.  In re ClassicStar, 823 F. Supp.2d at 641-642 (citing White v. Winchester Land Development Corp., 584 S.W.2d 56, 61–62 (Ky. Ct. App. 1979)).  The alter ego theory of piercing the corporate veil formulation requires a demonstration "'(1) that the corporation is not only influenced by the owners, but also that there is such unity of ownership and interest that their separateness has ceased; and (2) that the facts are such that an adherence to the normal attributes . . . of a separate corporate existence would sanction a fraud or promote injustice.'" In re ClassicStar, 823 F. Supp.2d at 641-642 (citation omitted).  "'[T]he decision as to whether to pierce the corporate veil is an equitable one to be decided by the trial court and not the jury.'"  Id. (citing Daniels v. CDB Bell, LLC, 300 S.W.3d 204, 213 (Ky. Ct. App. 2009)).  "The corporate veil should be pierced only 'reluctantly and cautiously' and then only where some combination of the following factors is present: undercapitalization, failure to observe formalities of corporate existence, nonpayment or overpayment of dividends, siphoning off of funds by the dominant shareholders, where the majority shareholders have guaranteed

4

corporate liabilities in their individual capacities, and where commingling of personal and corporate funds has occurred." In re ClassicStar, 823 F. Supp. 2d at 642.

Similarly, under Delaware law, the alter ego doctrine for piercing the corporate veil requires "(1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of [fraud,] injustice or unfairness is present." Trevino v. Merscorp, Inc., 583 F. Supp. 2d 521, 528 (D. Del. 2008). See also StrikeForce Technologies, Inc. v. PhoneFactor, Inc., 2013 WL 6002850, *4 (D. Del. Nov. 13, 2013)("fraud or similar injustice"); Applied Biosysterns, Inc. v. Cruachem, Ltd., 772 F.Supp. 1458, 1463 (D. Del. 1991) ("Under the alter ego or piercing the corporate veil doctrine, courts will ignore the corporate boundaries between parent and subsidiary if fraud or inequity is shown."); In re ClassicStar, 823 F. Supp.2d at 641.  When determining whether to pierce the corporate veil, Delaware courts examine: "whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder." Quantum Loyalty Systems, Inc. v. TPG Rewards, Inc., 2009 WL 5184350, *7 (D. Del. Dec. 23, 2009)(citation omitted).

Thus, it is unnecessary at present for the Court to decide this issue because there does not appear to be a conflict of law between Kentucky and Delaware with regard to veil-piercing.  The Court will apply Kentucky law for the purposes of Defendants' motion to dismiss.

### B. Single Entity

The complaint contains sufficient allegations as to the control element required to pierce the corporate veil of Louisville Leasehold.  Chase sets forth general allegations that Louisville

Leasehold and the other defendants operated as a single economic entity for purposes of acquiring title to the Office Properties and the leasehold interest in the Ground Lease Property. Chase alleges that Golden Ignot, Louisville Leasehold, and GI Louisville were formed on February 1, 2013, by the same attorney.  Chase maintains that media reports indicate that Pangli and Greenstone are Golden Ignot's investors and that Weitz is Greenstone's managing director. Further, contracts attached to the complaint reflect that Pangli executed the purchase agreements for both the Office Properties and the Ground Lease Property, Weitz signed the Assignment and Assumption of Lease on behalf of Golden Ignot as Golden Ignot's Managing Partner, and Weitz also signed the Assignment and Assumption of Sublease for GI Louisville, the sole member of Louisville Leasehold.

Chase maintains that Louisville Leasehold does not have any employees of its own and failed to observe the formalities of corporate existence.  Additionally, Chase alleges that Louisville Leasehold was undercapitalized and insolvent at the time it incurred the debt to Chase. Chase contends that undercapitalization is demonstrated by Louisville Leasehold's immediate financial inability to pay the $21,211.25 rent, plus taxes, utilities, and insurance.  Chase also alleges that Weitz instructed Louisville Leasehold's property manager not to pay Chase the monies received from the tenant at 426 West Jefferson Street.  Construing the complaint in the light most favorable to the Plaintiff, the Court finds that Chase has sufficiently pled a significant overlap between the companies and individuals, the undercapitalization of Louisville Leasehold, and transactions reflecting that Pangli and Weitz acted in coordination with or on behalf of the defendant entities.

### C.  Fraud or Injustice

In resolving the second element, the court must determine whether continued recognition

6

of the corporation would sanction fraud or promote injustice. Inter–Tel Technologies, 360 S.W.3d at 165. "[T]he injustice must be some wrong beyond the creditor's mere inability to collect from the corporate debtor." Id. at 164. The Kentucky Supreme Court noted three examples of the requisite injustice required to support a veil-piercing claim: (1) "where a party would be unjustly enriched"; (2) "where a parent corporation [or individuals] that caused a [company's] liabilities and its inability to pay for them would escape those liabilities"; and (3) where "an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful." Id.

Chase contends that Defendants created Louisville Leasehold to absorb existing contractual liabilities without the financial ability to meet these obligations while at the same time collecting substantial rent from Chase on the Office Properties.  According to Chase, this conduct shields Defendants from liability constituting misuse of the corporate form and satisfies the injustice prong.  Essentially, these facts suggest that the continuing abuse of corporate form would unjustly enrich the Defendants, permit them to escape liabilities they caused Louisville Leasehold to incur, and would ignore a scheme to heap liability on Louisville Leasehold, while permitting the collection by Defendants of substantial lease payments from Chase.  See Inter–Tel Technologies, 360 S.W.3d at 165.  The Court finds that these facts adequately allege, at the very least, inequity or injustice under the second element. Tully v. Eaton Corp., 2013 WL 4460272, *7 (E.D. Ky. Aug. 16, 2013).

Furthermore, it should be noted there is "no authority requiring a claim to pierce the corporate veil be subjected to the heightened pleading requirement for fraud claims." Pro Tanks Leasing v. Midwest Propane and Refined Fuels, LLC, 2013 WL 6713215, *1 (W.D. Ky. Dec. 18, 2013).  This second element is "merely an element which is required to be met in order to pierce

the corporate veil, not a claim for fraud. As a result, the heightened pleading requirement for fraud claims is not necessary. Furthermore, fraud is not necessarily even required to pierce the corporate veil—a mere injustice will suffice." Id. (citing Inter–Tel Technologies, 360 S.W.3d at 165).

Thus, the Court finds that Chase has sufficiently alleged alter ego liability by asserting that these Defendants exercised control over Louisville Leasehold as a single entity and by alleging an element of fraud or injustice.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants, Golden Ignot, LLP, Peter Weitz, and Inderjit Pangli, to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) [DN 29] is **DENIED**.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 6, 2015

8